IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:05CV208

| | |
|---|---|
| AMAR BEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED PARCEL SERVICE, INC. and ) | |
| TEAMSTERS LOCAL UNION NO. 71, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on the following motions and memoranda: (1) Defendant Teamsters Local Union No. 71's Motion to Dismiss Complaint and Memorandum in Support of Motion to Dismiss, both filed June 3, 2005 [Documents ## 3, 4]; (2) Plaintiff's *pro se* Motion to Grant Relief Demanded in Complaint, filed June 22, 2005 [Document # 10]; (3) Plaintiff's *pro se* Motion for Entry of Default, filed October 12, 2005 [Document # 11]; (4) Plaintiff's *pro se* Motion for Default Judgment, filed October 20, 2005 [Document # 12]; (5) Defendant United Parcel Service, Inc.'s Motion to Dismiss and Memorandum of Law in Support of Motion to Dismiss, both filed November 1, 2005 [Documents ## 13, 14]; (6) Plaintiff's Response to Defendant Teamsters Local Union No. 71's Motion to Dismiss, filed January 10, 2006 [Document # 18]; and (7) Defendant Teamsters Local Union No. 71's Reply in Support of Motion to Dismiss, filed January 18, 2006 [Document #19]. These motions are now ripe for disposition by the Court

Having carefully considered the arguments of the parties, the record, and the applicable

1

authority, the Court will grant Defendant Teamsters Local Union No. 71's Motion to Dismiss, deny as moot Plaintiff's Motion to Grant Relief Demanded in Complaint Against Defendant United Parcel Service, Inc., deny as moot Plaintiff's Motion for Entry of Default, deny as moot Plaintiff's Motion for Default Judgment, and deny as moot Defendant United Parcel Service, Inc.'s Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL HISTORY

For purposes of this Motion to Dismiss, the Court accepts the following facts derived from Plaintiff's Complaint as true. *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 189 (4th Cir. 2002) (noting that "at the motion to dismiss stage, a court must accept the allegations in the complaint as true and view the complaint in the light most favorable to the plaintiff").

Plaintiff Amar L. Bey ("Mr. Bey" or "Plaintiff") began employment with Defendant United Parcel Service, Inc. ("UPS") in 1978 and worked as a part-time employee until 1989. In 1989, Mr. Bey was awarded a full-time package car driver position, and continued in that position until his termination following an arbitration decision issued on July 21, 2004. UPS maintains a written policy regarding standards of appearance for drivers and other UPS employees having contact with customers and the public, which was applicable to Mr. Bey. (Compl. Exh. 4).

During his employment with UPS, the terms and conditions of Mr. Bey's employment were covered by a collective bargaining agreement titled "National Master United Parcel Service Agreement and Atlantic Area Supplemental Agreement." Defendant Teamsters Local Union No. 71 ("Teamsters No. 71") is the collective bargaining representative of UPS bargaining unit

employees, including Mr. Bey, employed at UPS facilities in the greater Charlotte, North Carolina metropolitan area.

At some time during his employment with UPS, Mr. Bey became a member of The Maru Marranos Temple of the United States of America, located at 328 Sylvania Avenue, Charlotte, North Carolina 28206. (*Id.* Exh. 2). Moreover, on July 8, 2003, Mr. Bey became a Moorish Marranos Hebrew Nazarite RaHBeY (rabbi). (*Id.*).

On January 14, 2004, Plaintiff submitted to UPS a "Request for Exemption from UPS Uniform and/or Appearance Guidelines for Religious Beliefs." (*Id.* ¶ 3; Exh. 1). Mr. Bey advised UPS that "[a]s a Nazarene I do not cut my hair nor shave my face, in order to remain a priest in the Moorish Culture." (*Id.* Exh. 1). In response, on January 19, 2004, and January 28, 2004, Mr. Bey's supervisors asked Plaintiff to provide additional information pertaining to his exemption request. (*Id.* ¶¶ 4, 6). On February 2, 2004, Noble Kedar Bey, the Great Grand RaHBeY of the Maru Marranos Temple sent a copy of the Articles of Association from Plaintiff's religious organization to "Fran Vogelien," a UPS representative. (*Id.* ¶ 8). Additional meetings regarding Plaintiff's exemption request occurred in early February at which Mr. Bey and his UPS supervisors were present. (*Id.* ¶¶ 9, 10).

On February 25, 2004, through a written memorandum and in-person conference, Fran Folino, a UPS Human Resource Manager, advised Mr. Bey that UPS granted him a conditional exemption to the Company's appearance standards. (*Id.* ¶ 11; Exh. 4). These conditional exemptions required Mr. Bey to keep his beard closely trimmed and professional in appearance, and to wear his hair pulled back and tucked into a UPS-issued hat at all times while on duty. (*Id.*). The UPS supervisors further advised Mr. Bey that he was permitted to work inside the

building if he so desired, until a final resolution of the dispute. However, the UPS supervisors reminded Mr. Bey that he was not automatically exempt from UPS' appearance standards. (*Id.*).

On March 1, 2004, Mr. Bey responded to UPS' conditional exemption proposal. (*Id.* ¶ 12; Exh. 5). In this letter, Mr. Bey stated that he "distinctly and clearly stated that I would not go against my God nor Religious Practices in cutting my Nazarite RaHBEy Locks, nor conceal my God given Locks-Hair under a UPS cap or otherwise." (*Id.* Exh. 5). Mr. Bey further argued that he was a victim of sexual discrimination because UPS did not require female drivers to cover their hair with a UPS cap. (*Id.*). Mr. Bey then advised UPS that due to his religious beliefs, he could no longer work past sundown on Friday. (*Id.*).

On March 2, 2004, and March 8, 2004, UPS supervisors met with Mr. Bey and again explained the terms of the conditional exemption to the UPS Appearance Standards. (*Id.* ¶¶ 13, 14). Subsequent to these meetings, Ms. Folino sent Mr. Bey a letter, advising him that he was no longer permitted to work inside the building and was expected to return to work as a package car driver on March 10, 2004. (*Id.* ¶ 14; Exh. 6).

Mr. Bey reported to work on March 10, 2004, but was not in compliance with the conditional appearance exemptions granted by UPS. (*Id.* ¶ 15). In response to Mr. Bey's non-compliance, UPS issued a warning letter to Plaintiff, which is the first step in disciplinary action under the terms of the collective bargaining agreement. (*Id.* Exh. 7). On March 12, 2004, Mr. Bey reported to work and again was not in compliance with the conditional appearance exemptions. (*Id.* ¶ 16(a)). UPS supervisors called Mr. Bey and Teamsters No. 71 Business Representative Joe Eason into a meeting to discuss further discipline for Mr. Bey's non-compliance. (*Id.*). Mr. Bey's supervisors then issued a three-day suspension to Mr. Bey for

4

failing to meet the UPS Appearance Standards. (*Id.*).

Despite the previous warnings and discipline, Mr. Bey arrived at work on March 15, 2004, again in non-compliance with the conditional appearance exemptions to UPS' Appearance Standards. (*Id.* ¶ 16(b)). Consequently, UPS issued a discharge letter to Mr. Bey. (*Id.* ¶ 16(b); Exh. 7). On March 22, 2004, Mr. Bey again reported to work not in compliance with the conditional appearance exemptions and was issued a second discharge. (*Id.*). However, pursuant to the collective bargaining agreement provisions, the enforcement of these discharge notices was stayed pending a final determination under the grievance and arbitration procedures. Therefore, Mr. Bey continued to work for UPS inside the Company's building. On March 31, 2004, Mr. Bey filed a grievance protesting each of the separate incidents of discipline. (*Id.* ¶ 20; Exh. 8).

On April 26, 2004, a "local level hearing" was conducted at the UPS facility under the terms of the collective bargaining agreement. Teamsters No. 71 representatives attended this meeting with Mr. Bey. After discussions between the Union representatives for Mr. Bey and UPS supervisors, Teamsters No. 71 decided to file Mr. Bey's grievances with the Atlantic Area Parcel Grievance Committee ("AAPGC") for resolution pursuant to the terms of the collective bargaining agreement.[1]

On July 20, 2004, Mr. Bey met with Teamsters No. 71 Representative Joe Eason to prepare for the hearing before the AAPGC. Mr. Bey was present when his case was presented before the AAPGC on July 21, 2004. (*Id.* ¶ 21). Mr. Bey believed as of the July 21, 2004 hearing, that he had not been fairly represented by Teamsters No. 71. (*Id.*).

---

[1]Pursuant to the collective bargaining agreement, the AAPGC is a joint committee made up of three Company panel members, three Union panel members, and one impartial arbitrator. *Ash v. United Parcel Service, Inc.*, 800 F.2d 409, 410 (4th Cir. 1986).

The arbitrator, David Vaughn, broke a deadlocked decision between the three Company panel members and the three Union panel members and issued a decision that denied Mr. Bey's March 31, 2004 grievances and upheld his March 22, 2004 termination by UPS. (Def. Mem. in Supp. Exh. A).[2] After the July 21, 2004 decision, Mr. Eason notified Mr. Bey via telephone of the arbitrator's decision. Moreover, on August 2, 2004, Mr. Bey personally signed for receipt of a written notice of the arbitrator's decision. (Def. Mem. in Supp. Exh. B). Additionally, on August 12, 2004, and August 24, 2004, Mr. Bey received, per his written request, two written confirmations of the July 21, 2004 decision. (Def. Mem. in Supp. Exh. C).

Subsequently, on May 2, 2005, Plaintiff filed his Complaint in the Superior Court Division of the Iredell County, North Carolina General Court of Justice, alleging that UPS breached the terms of the collective bargaining agreement by subjecting Plaintiff to discrimination and contending that Teamsters No. 71 breached its duty of fair representation.[3] (Compl. ¶¶ 18, 21). On June 2, 2005, Defendant Teamsters No. 71 removed the case to this

---

[2]Although the Exhibits attached to Defendant Teamsters No. 71's Motion to Dismiss were not part of Plaintiff's Complaint, since these documents are integral to and relied on in Plaintiff's Complaint, and Plaintiff does not challenge their authenticity, this Court may consider these documents without converting Defendant's Motion to Dismiss to a Motion for Summary Judgment. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

[3]Although Plaintiff makes numerous citations to North Carolina statutes and the United States Constitution in his Complaint, a review of his allegations leads the Court to conclude that he contends that UPS discriminated against him, in violation of the collective bargaining agreement, and Teamsters No. 71 failed to fairly represent him throughout the proceedings surrounding his claims against UPS. As described above, the terms and conditions of Mr. Bey's employment were covered by the collective bargaining agreement. One such term of Mr. Bey's employment was UPS' appearance standards policy. Mr. Bey's complaints here all relate to UPS' decisions regarding the applicability of its appearance standards to Mr. Bey and the Union's failure to adequately represent him throughout the proceedings surrounding his complaints. Consequently, Mr. Bey's claims are substantially dependent on the analysis of the collective bargaining agreement and Section 301 of the Labor Management Relations Act preempts any other claims asserted by Plaintiff against Defendants because such claims are substantially dependent on the analysis of the collective bargaining agreement. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877 (1988) (noting that if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute).

Court pursuant to 28 U.S.C. §§ 1331, 1337, 1442 and 1443.[4]

## II. DISCUSSION

A.  **Defendant Teamsters Local Union No. 71's Motion to Dismiss**

Defendant Teamsters No. 71 now seeks to dismiss Plaintiff's Complaint as barred by the applicable statute of limitations and for failure to state a claim upon which relief can be granted.

1.  **Plaintiff's claims against UPS and Teamsters No. 71**

Plaintiff filed this action against UPS for breach of the collective bargaining agreement, pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and against Teamsters No. 71 for breach of its duty of fair representation.[5]

"It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163 (1983) (citing *Smith v. Evening News Assn.*, 371 U.S. 195 (1962)). Prior to bringing such suit, though, an employee is required to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *Id.* Subject to very limited judicial review, the employee is bound by the result according to the finality provisions of the agreement. *Id.* at 164.

However, "when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary or perfunctory fashion as to breach its duty of fair representation," an employee may bring a suit against both his employer and the

---

[4]Pursuant to Defendant Teamsters No. 71's Notice of Removal, as of the date of removal, Defendant UPS had not been served in the action and therefore was not required to join in the removal.

[5]Although Plaintiff does not cite to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, since Plaintiff is proceeding *pro se*, the Court broadly construes his Complaint to encompass such a claim.

7

union, notwithstanding the outcome or finality of the arbitration proceeding. *Id.* Such an action is called a "hybrid 301" and is "'a direct challenge to the private settlement of disputes under [the collective-bargaining agreement].'" *Id.* at 165 (quoting *Mitchell Steelworkers v. Flowers*, 451 U.S. 965, 966 (1981)).

In order to prevail on the merits of a "hybrid 301" action, an employee must prove *both* (1) that the union breached its duty of fair representation, and (2) that the employer violated the collective bargaining agreement. *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002) (citing *DelCostello*, 462 U.S. at 164-65, 103 S. Ct. 2281, 76 L. Ed. 2d 476). "Though both claims are brought in one suit, a cause of action 'will only lie against an employer if the union has breached its duty of fair representation of the employee.'" *Id.* (quoting *Amburgey v. Consolidation Coal Co.*, 923 F.2d 27, 29 (4th Cir. 1991)). Therefore, "an employee 'must prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer.'" *Id.* at 656-57 (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 67, 101 S. CT. 1559, 67 L. Ed. 2d 732 (1981)). In sum, an employee's claims against his union and his employer are interlocked and neither claim is viable if the other claim fails. *Id.* at 657 (citing *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997)). Thus, a federal court reviews allegations against employers for breach of collective bargaining agreements *only* when the employee first proves that the union representing him breached its duty of fair representation. *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967)); *see also Amburgey*, 923 F.2d at 29 (noting a cause of action only lies against an employer if the employee proves that the union breached its duty of fair representation). The rationale behind this rule is that "[f]ederal labor law policy favors adjustment by the parties of

disputes arising under a collective bargaining agreement." *Amburgey*, 923 F.2d at 29 (citing 29 U.S.C. § 173(d)).

> "[F]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes." The federal courts do not invade this domain on the complaint of an employee unless his union is "grossly deficient" in its representation or "recklessly disregards" the employee's rights.

*Amburgey*, 923 F.3d at 29 (quoting *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 890-91 (4th Cir. 1980)).

## 2. **Statute of limitations**

The Supreme Court has made clear that the six month limitation period for filing unfair labor practice charges, as outlined in Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160, is the statute of limitations applicable to an employee's action against his employer for breach of the collective bargaining agreement and against his union for breach of the duty of fair representation. *DelCostello*, 462 U.S. at 171-72, 103 S. Ct. 2281; *see also West v. Conrail*, 481 U.S. 35, 37-38, 107 S. Ct. 1538, 1541 (1987) (reaffirming holding that the six-month period prescribed in Section 10(b) should be applied to hybrid claims under § 301 of the Labor Management Relations Act, 29 U.S.C. 185). This six month period accrues when the plaintiff knows or should know that a violation of his rights has occurred. *DelCostello*, 588 F. Supp. 902, 908 (D. Md. 1984), *aff'd*, 762 F.2d 1219 (4th Cir. 1985) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)).

> In hybrid § 301/fair representation suits, courts have stated that the § 301/fair representation claim arises when the plaintiff could first successfully maintain a suit based on that case of action . . . or when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.

9

*DelCostello*, 588 F. Supp. at 908, *aff'd*, 762 F.2d 1219 (4th Cir. 1985) (citing *Santos v. District Counsel of New York City & Vicinity of United Brotherhood of Carpenters & Joiners of Am.*, 619 F.2d 963, 968-69 (2nd Cir. 1980); *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7th Cir. 1983), *cert. denied*, 464 U.S. 1070, 104 S. Ct. 976, 79 L. Ed. 2d 214 (1984) (and cases cited therein); *Bruch v. United Steelworkers of Am.*, 583 F. Supp. 668 (E.D. Pa. 1984)).

In the instant case, Plaintiff stated:

> I received a letter the 1st week of June 2004, from the union informing me that the grievance hearing would be on Tuesday, July 20th [2004] or Wednesday, July 21st [2004] at Myrtle Beach, S.C. . . . During the hearing on Wednesday July 21st the Union failed to show or prove that my discharge was improper and without just case. The final question that I was asked at the hearing was: "Do you feel you have been represented fairly?," and my response was "No."

(Compl. ¶ 21). Plaintiff further maintains that Teamsters No. 71 allegedly violated its duty of fair representation by failing to argue that Plaintiff's discharge violated "the Supreme Law of the Land." (Pl. Resp. to Def. Mot. to Dismiss pp. 1, 3). Therefore, as of July 21, 2004, Plaintiff knew that an alleged violation of his rights had occurred as he clearly believed and articulated that Teamsters No. 71 breached its duty of fair representation. Moreover, on August 2, 2004, Mr. Eason sent a letter to Mr. Bey, advising him that the AAPGC upheld UPS' termination of Mr. Bey's employment. Consequently, the *latest* that Mr. Bey's claims against UPS and Teamsters No. 71 accrued was August 2, 2004.[6] Mr. Bey did not file his Complaint until May 2, 2005, which was nine months after his cause of action accrued. Therefore, Mr. Bey's claims against the Union and UPS are barred by the statute of limitations because more than six months elapsed

---

[6]Plaintiff's allegation in Paragraph 21 of his Complaint indicates that his cause of action accrued on July 21, 2004. However, taking the facts in the light most favorable to Plaintiff and construing every inference in his favor, the Court will presume that Plaintiff's cause of action did not accrue until August 2, 2004, when he received the letter from Mr. Eason.

between when Mr. Bey knew about the alleged breach of duty of representation and his filing of this lawsuit. Thus, Defendant Teamsters No. 71's Motion to Dismiss is <u>granted</u> and Plaintiff's lawsuit against Defendant UPS and Defendant Teamsters No. 71 is barred by the statute of limitations.

B.      **Other Pending Motions**

In light of the Court's finding that Plaintiff's lawsuit is barred by the applicable statute of limitations, the other pending motions - Plaintiff's Motion to Grant Relief Demanded in Complaint, Plaintiff's Motion for Entry of Default, Plaintiff's Motion for Default Judgment, and Defendant United Parcel Service, Inc.'s Motion to Dismiss [7] – are all <u>denied as moot</u>.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant Teamsters Local Union No. 71's Motion to Dismiss is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Grant Relief Demanded in Complaint is hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Entry of Default is hereby **DENIED AS MOOT**.

---

[7]The Court notes that Defendant UPS' Motion to Dismiss was based on Plaintiff's failure to serve UPS with process in this action. (*See* Def. UPS Mem. in Supp. pp. 2-6). However, since Plaintiff did not file his lawsuit within the six month statute of limitations, his hybrid Section 301 claim is dismissed against Defendant Teamsters No. 71 *and* Defendant UPS. Consequently, Defendant UPS' Motion to Dismiss is moot. In any event, a review of Defendant UPS' Motion to Dismiss and the docket lead the Court to conclude that Plaintiff did not serve UPS with process in this matter.

11

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment is hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant United Parcel Service, Inc.'s Motion to Dismiss is hereby **DENIED AS MOOT**.

Signed: February 9, 2006

Richard L. Voorhees
Chief United States District Judge